UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICKY SWIFT, )<br>)<br>    Petitioner )<br>       v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>    Respondent ) | CAUSE NO.   3:04-CV-758RM<br>(arising under  3:99-CR-44(01)RM) |

## OPINION AND ORDER

On December 9, 2004, Ricky Swift petitioned the court to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the court denies Mr. Swift's petition.

BACKGROUND

Because the factual background surrounding the underlying convictions upon which Mr. Swift now attacks his sentence is explained in United States v. Swift, 220 F.3d 502 (7th Cir. 2000), the court recites only the facts and procedural background needed to resolve the present § 2255 petition.

After a seven-count indictment was filed against him, Mr. Swift (by way of his first counsel, Brian Truitt) successfully moved to suppress certain evidence the government had obtained during the course of its investigation. The court of appeals reversed the court's order granting Mr. Swift's motion to suppress, United States v. Swift, 220 F.3d 502 (7th. Cir. 2000), a decision left undisturbed by the Supreme Court, Swift v. United States, 531 U.S. 1169 (2001) (denying Mr. Swift's

petition for writ of certiorari). Mr. Truitt represented Mr. Swift during each of these proceedings before this court, the court of appeals, and the Supreme Court.

After the remand, Mr. Swift asked for substitution of counsel, which the court accommodated, and Brian May became Mr. Swift's counsel for the duration of his trial. After a full trial on the charges, Mr. Swift was convicted on all counts, and the court sentenced him to a term of 679 months' imprisonment.

After receiving this sentence, Mr. Swift again requested the court to substitute counsel for his appeal of his conviction, and Tillman J. Breckenridge became Mr. Swift's appellate counsel. After the court of appeals affirmed the court's judgment and the Supreme Court denied his petition for writ of certiorari, Mr. Swift filed this petition, which raises several arguments about Mr. Truitt, Mr. May, and Mr. Breckenridge, all of whom Mr. Swift alleges rendered him ineffective assistance of counsel.

## ANALYSIS

As an initial matter, the government asserts Mr. Swift's petition is time-barred by the Antiterrorism and Effective Death Penalty Act of 1996, which sets a one-year time limit on filing this type of petition from the date the conviction becomes final. The government argues that Mr. Swift's petition was filed one day late: Mr. Swift's conviction became final on December 8, 2003, when the Supreme Court denied his second petition for write of certiorari, and he filed this petition with the court on December 9, 2004. Mr. Swift responds by availing himself of the

"prison mailbox rule" of Houston v. Lack, 487 U.S. 266 (1988), which would render the motion timely filed on December 7, 2004, the date it was delivered into the prison mail system.

Rule 3 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides the relevant procedures that must be complied with for Mr. Swift's petition to have been timely filed.

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing … Timely filing may be shown by a declaration in compliance with 28 U.S.C. 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Rule 3(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts. The government contends that Mr. Swift has not complied with this rule because he merely set forth the date of deposit, and did not state that first-class postage had been prepaid. Rule 3 does not list an exhaustive list of how an inmate can show timely filing, but merely provides methods that may be used. Mr. Swift provides adequate evidence that he deposited the petition into the institution's mail system through the certified mail receipt showing both the date of deposit (December 7, 2004) and the date of receipt by the court (December 9, 2004). Mr. Swift's petition is not time-barred. Thus, the court turns to the merits of Mr. Swift's § 2255 petition.

"The court may vacate or correct [Mr. Swift's] sentence if he can show that the district court sentenced him in violation of the Constitution or laws of the

3

United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack," Hays v. United States, 397 F.3d 564, 566 (7th Cir. 2005) (citations and quotations omitted), but such relief is "reserved for extraordinary situations." Id. Mr. Swift contends the various alleged instances when he received ineffective assistance of counsel provide such extraordinary situations.

The Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. CONST. amend. VI. An attorney must not only be present with a criminal defendant at his trial, but must assist the defendant in a way that ensures the trial is fair. Strickland v. Washington, 466 U.S. 668, 685 (1984). A fair trial is one in which the adversarial process functions properly to produce a just result. Id. at 686.

> In order to establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors the result of the proceeding would have been different. In terms of the performance prong, judicial scrutiny of counsel's performance must be highly deferential. Only those who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. The burden for a defendant is high when he attempts to contend his counsel's trial strategy was ineffective because *Strickland* builds in an element of deference to counsel's choices in conducting the litigation. In order to establish prejudice under the second prong, the unprofessional errors of counsel must be so egregious that the trial was rendered unfair and the verdict rendered suspect.

Rodriguez v. United States, 286 F.3d 972, 983 (7th Cir. 2002) (citations and quotations omitted.)

Thus, to succeed, Mr. Swift must prove both deficient performance and actual prejudice to show that his Sixth Amendment right to counsel was violated. Id. Deficient performance is "measured against an objective standard of reasonableness, under prevailing professional norms." Rompilla v. Beard, 125 S. Ct. 2456, 2462 (2005) (citations and quotations omitted). Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2467, citing Strickland v. Washington, 466 U.S. at 694. For reasons set forth below, the court finds that Mr. Swift is not able to satisfy either Strickland's objective standard of reasonable effectiveness or the actual prejudice prong. Either finding alone defeats Mr. Swift's Sixth Amendment claim, and results in the denial of Mr. Swift's § 2255 petition.

### INEFFECTIVE ASSISTANCE FROM MR. TRUITT

Mr. Swift first claims that he received ineffective assistance from Mr. Truitt, Mr. Swift's attorney from the pretrial stage (including the successful suppression hearing) through the interlocutory appeal, which resulted in a reversal of the court's suppression order and remand for trial. Mr. Swift identifies three actions by Mr. Truitt during the government's interlocutory appeal as ineffective assistance: Mr. Truitt (1) didn't contest the government's statement of facts, (2)

5

didn't argue that the government waived some arguments on appeal, and (3) failed to investigate matters pertaining to the interlocutory appeal.

Mr. Swift first argues that Mr. Truitt's failure to object to the government's statement of facts was objectively unreasonable. Mr. Swift claims the government somehow misrepresented facts in their brief, in part because they reference a transcript version of an audio tape submitted as evidence at trial, and Mr. Truitt should have objected to both the misrepresented facts and the referenced transcript. FED. R. APP. P. 28(a)(7) requires a party to file a statement of facts, and the law allows the government to reference a transcription of an audio taped exhibit. *See* United States v. Burke, 781 F.2d 1234, 1246 (7th Cir. 1985).  Mr. Swift has not identified any specific facts that were referenced by the government and either not contained in the record or misrepresented in light of the record. Thus, Mr. Truitt's failure to object to the government's statement of the facts was objectively reasonable under the circumstances.

Mr. Swift next argues that the government shifted its legal theory on appeal from "attenuation doctrine" to "inevitable discovery," and Mr. Truitt should have argued a "waiver defense" on appeal. Mr. Truitt's failure to argue the government waived its ability to raise certain arguments on appeal is reasonable; nothing in the record indicates that the government affirmatively waived any rights on appeal. *See* United States v. Jaimes-Jaimes, 406 F.3d 845, 847 (7th Cir. 2005) ("Waiver is the intentional relinquishment of a known right. Forfeiture is the failure to timely assert a right." (citations omitted)). Neither does the record

6

indicate the government forfeited any of its appellate arguments because its suppression memorandum adequately raised the same or similar arguments with the court as was raised on interlocutory appeal. Mr. Truitt's decision not to argue that the government waived or forfeited certain arguments that the government had not waived or forfeited cannot be found to be objectively unreasonable.

Finally, Mr. Swift says Mr. Truitt failed to investigate certain facts and raise certain arguments on the interlocutory appeal. While Mr. Swift correctly points out that an attorney has a duty to investigate material facts, *see* Rompilla v. Beard, 125 S. Ct. at 2462, a petitioner who claims his attorney's failure to do so violated his Sixth Amendment rights must "provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." Richardson v. United States, 379 F.3d 485, 488 (7th Cir. 2003). Mr. Swift hasn't provided the court with any specific fact that Mr. Truitt should have investigated, so he cannot show that Mr. Truitt's failure to investigate was objectively unreasonable or caused him any actual prejudice.

Mr. Truitt's failure to argue the issue of standing on appeal doesn't amount to unconstitutional ineffectiveness. Mr. Swift must "overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689 (quotations and citations removed). The presumption that defense counsel's action can be defined sound strategy is a strong one, id., and Mr. Swift hasn't shown how Mr. Truitt's choice of arguments on appeal, especially in light of the success of similar

7

arguments when this court entertained them, were not sound trial strategy. Without this specific showing, the court cannot find they were objectively unreasonable.

### INEFFECTIVE ASSISTANCE FROM MR. MAY

Mr. Swift sets forth six alleged instances of Mr. May rendering ineffective assistance of counsel at trial: (1) Mr. May should have filed a motion challenging evidence relating to his identification before a similar motion was filed; (2) Mr. May didn't timely file a motion challenging the line-up procedures used during the investigation; (3) Mr. May should have presented impeachment evidence to rebut Mr. and Mrs. Hamel's testimony; (4) Mr. May failed to investigate into the background of the alibi witness Mr. Swift provided, and as a result, the alibi witness was impeached; (5) Mr. May should have procured an independent DNA expert to provide a second opinion on the DNA evidence; (6) Mr. May failed to raise certain arguments during the sentencing phase.

Mr. Swift can't show that Mr. May's timing in filing the motions attacking the identification evidence and the line-up procedures is objectively unreasonable. Mr. May made both motions, and the court denied them, in part, on their merits. Mr. May filed these motions as timely as he reasonably could be expected to do so. Due to Mr. Swift's own motion for new counsel, Mr. May was working with a shorter timetable than usual. The record doesn't show how earlier filings would have altered the outcome of the trial. With respect to his first two instances, Mr.

Swift hasn't shown that his counsel's actions were objectively unreasonable or that he suffered any prejudiced under Strickland.

Mr. Swift also disputes Mr. May's alleged decision not to impeach Mr. and Ms. Hamel with information contained in a police report that Mr. Swift submits in support of his § 2255 motion. Once again, Mr. Swift cannot show that Mr. May's alleged deficiencies were objectively unreasonable. Mr. May impeached Mr. and Mrs. Hamel's identification testimony using information from the police investigation, and Mr. Swift hasn't shown how Mr. May's alleged decision to not use the police report was anything but sound trial strategy. Further, the information contained in the police report accompanying the petition is not of the sort that could have changed the outcome of the case or rendered the outcome suspect. Mr. Swift cannot show either objective reasonableness nor actual prejudice from the allegedly deficient impeachment of the Hamels.

Mr. Swift cannot show that he suffered actual prejudice from Mr. May's alleged failure to properly investigate an alibi witness Mr. Swift provided for his defense. First, Mr. Swift hasn't adequately explained how the outcome of the trial would have differed had Mr. May learned of the government's impeachment evidence before trial. Other than Mr. Swift's own assertion that Mr. May could have "allowed Mr. Crayton's testimony to be valid; thereby affecting the verdict," the court can't imagine how Mr. May's knowing how the government was going to impeach Mr. Crayton renders Mr. Swift's conviction on count ten suspect. Without

9

such a showing, Mr. Swift has not suffered actual prejudice from Mr. May's alleged failure to investigate.

Mr. Swift cannot show that he suffered any prejudice from May's decision not to procure a DNA expert to testify on Mr. Swift' behalf because he hasn't explained what new evidence that DNA expert would have provided to render the jury's verdict suspect. Mr. Swift alleges the existence of a third earpiece, but doesn't explain how expert testimony on this evidence or the other evidence already in the record could have altered the trial's outcome. The record reflects ample cumulative evidence linking Mr. Swift to the bank robberies of which he was convicted, so even if Mr. May's decision fell below the constitutional standard, Mr. Swift suffered no actual prejudice.

Finally, Mr. Swift attacks Mr. May's representation at the sentencing phase of his criminal proceedings — specifically, that Mr. May failed to argue U.S.S.G. § 2K2.1(b)(5) didn't apply to Mr. Swift's sentence. A miscalculation of the Guidelines by the trial court can be attacked under Strickland. *See* Glover v. United States, 531 U.S. 198 (2001). Mr. Swift, though, was not prejudiced from any application of U.S.S.G. § 2K2.1(b)(5) because, as noted in the court's sentencing memorandum, Mr. Swift is a career offender under U.S.S.G. § 4B1.1, and the length of his sentence wasn't affected by the presence or absence of arguments about application of U.S.S.G. § 2K2.1(b)(5). Mr. Swift can't show he suffered any actual prejudice under Strickland.

10

## INEFFECTIVE ASSISTANCE FROM MR. BRECKENRIDGE

Mr. Swift also asserts that Mr. Breckenridge, his third appointed counsel, rendered ineffective assistance on his appeal. Specifically, Mr. Swift argues that Mr. Breckenridge should not have abandoned three issues: the suggestive I.D. issue, Mr. Swift's expectation of privacy, and the illegal seizure of evidence from the vehicle. Other than identifying the issues and concluding that it was ineffective assistance of counsel for Mr. Breckenridge not to raise them on appeal, Mr. Swift points to no facts and cites no law as to why Mr. Breckenridge's failure to raise these issues violates the Sixth Amendment. Mr. Swift's arguments are undeveloped in both fact and law, and "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." United States v. Wimberly, 60 F.3d 281, 287 (7th Cir. 1995).

## BOOKER/BLAKELY SENTENCING ISSUES

Finally, Mr. Swift argues his sentence was unconstitutionally calculated under United States v. Booker, 125 S. Ct. 738 (2005). Mr. Swift was sentenced in 2001, and the Supreme Court's ruling in Booker does not apply retroactively to cases such as Mr. Swift. McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005) ("[w]e conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005"). Argument based on United States v. Booker cannot provide the basis for relief for Mr. Swift's § 2255 petition.

CONCLUSION

For the reasons stated above, the court DENIES Mr. Swift's § 2255 petition with prejudice [Doc. No. 195 on criminal docket 03:04-CR-758].

SO ORDERED.

ENTERED: September 8, 2005

                                      /s/ Robert L. Miller, Jr.
                                      Chief Judge
                                      United States District Court